Btjriíet, O. J.
The act in question is conceded to be special and local in its operation, and it is claimed by the attorney general that the subject-matter of the act is of a general nature, and that it is therefore in conflict with Sec. 26 of Art. 2 of the constitution, which provides that: “All laws of a general nature shall have a uniform operation throughout the state.”
By a long line of decisions of this Court it is estab *81 lished that this section of the constitution is mandatory, and not merely directory, and .that the question •as to whether a law is of a general nature must be determined from its subject-matter, operation and effect, and not merely from its form. To this extent all the decisions of this Court agree. But when it •comes to the rule by which it is to be determined-whether an act is of a general nature, or special and local, there has not been uniformity of decision or •opinion. In Kelley v. State, 6 Ohio St., 269, the judge delivering the opinion says: “We have then in the constitution, first, a general, unqualified, and positive prohibition or limitation of legislative power, forbidding the giving óf a partial operation to any law of a general nature — or in its own affirmative terms, requiring that a uniform operation throughout the state shall be given to all laws of a general nature. Without undertaking to discriminate nicely or define with precision, it may be said that the character of a law as general or local depends on the character of its subject-matter. If that be of a general nature, existing throughout the state, in every county, a subject-matter in which all the citizens have a common interest, * * * , then the laws which relate to and regulate it are laws of a general nature, and by virtue of the prohibition referred to, must have a uniform operation throughout the state.”
The same doctrine is found, in substance, in Cass v. Dillon, 2 Ohio St., 607. This doctrine was reaffirmed in Hixson v. Burson, 54 Ohio St., 470, and the same rule stated in these words: “Time and changed conditions may make it necessary to enlarge and extend the construction of the scope of section 26, of the second article of the constitution, but it is certainly safe to say now that every subject of legislation is *82 either of a general nature on the one hand,, or local or special on the other. It cannot be in its nature both general and special, because the two are inconsistent. If it is of a general nature, the constitution requires that all laws — not some laws — on that subject shall have a uniform operation throughout the state.”
The same rule was adopted in State v. Powers, 38 Ohio St., 54; Ex parte Falk, 42 Ohio St., 638; State v. Ellet, 47 Ohio St., 90; Commissioners v. Rosche Bros., 50 Ohio St., 103; State v. Nelson, 52 Ohio St., 88; State v. Bargus, 53 Ohio St., 94; State v. Ferris, 53 Ohio St., 314; State v. Davis, 55 Ohio St., 15; Gaylord v. Hubbard, 56 Ohio St., 25; Silberman v. Hay, 59 Ohio St., 582; State v. Buckley, 60 Ohio St., 273; State v. Brown, 60 Ohio St., 462; Platt v. Craig, 66 Ohio St., 75; and State v. Yates, 66 Ohio St., 546.
While the rule distinctly announced in Kelley v. State, supra; and Hixson v. Burson, supra, was not restated in all of the aboye cases, the decisions in those cases rest upon that rule, and in many of them the rule is stated and reaffirmed.
As a subject-matter which is general can and must be legislated upon by general laws haying a uniform operation throughout the state, it follows from the above rules, when carried to their full extent, that every subject-matter which can reasonably be covered and provided for by a general law, can have no special or local legislation as to it, or any of its parts. If the general law should be found too broad or too narrow, the remedy lies in an amendment of the general law so as to remedy the defect throughout the whole state, and not in passing a special or local law as to some special subject-matter to be carved out of, and separated from, the general subject.
*83 The above rules when carried to their full extent and import, prohibit special or local legislation upon a subject-matter which is general in its nature, and which can be reasonably covered and provided for by a general law having a uniform operation throughout the state. And the best evidence that a subject-matter can be covered and provided for by a general law having uniform operation, is the fact that such general law has been passed upon that subject-matter. When such is the case no local or special law can be constitutionally enacted on that subject-matter. If the subject-matter has not been covered by a general law having a uniform operation throughout the state, the members of the general assembly must form their best judgment under their oaths as to whether or not the subject-matter is of a general nature, and capable of being covered by a general law having such uniform operation, and vote accordingly, the final test as to its constitutionality resting with this Court.
The constitution, including this section, was framed by the Constitutional Convention, and adopted by a vote of the electors of the state, and the language is not to be understood as strained, technical or mysterious; but so plain that any ordinary man may understand and comprehend it. 'The words of Sec, 20 of Art. 2 are plain and easily understood, and from the language used in the section, any ordinary man would say that only general laws can be passed upon a subject-matter of a general nature.
The members of the general assembly are required to take an oath to support the constitution, which oath includes this Sec. 26 of Art. 2, and the idea cannot be tolerated that the framers of the constitution and the electors of the state, required the members of the general assembly to take an oath to support a *84 provision so intricate as not to be understood. On the contrary it must have been expected that each member of the general assembly would know, or could easily inform himself, as to whether a subject-matter is of a general nature, and capable of being covered and provided for by a general law having a uniform operation throughout the state.
What has been said in some of the cases by judges delivering opinions, to the effect that no general rule can be given on that subject, and that each law must be tested in the courts before its constitutionality can be known, is not sound. The unsoundness is shown by the fact that for many years after the adoption of the constitution of 1851, there were few, if any, efforts made by the general assembly to pass local or special laws upon a subject-matter general in its nature; and because it cannot be believed that the framers of the constitution and electors, prescribed a rule which could not be understood, and at the same time required the members of the general assembly to support it. It is to the interest of everybody that the rule as to what constitutes a general subject-matter requiring laws of a general nature, should be so plain and simple as to be easily understood, and not to have technical exceptions — a small ring within a large one — a general subject-matter with a special subject-matter carved out of it.
The first effort of this Court to carve a special subject-matter out of a general one, so far as we know, is in the case of State ex rel. v. The Judges, 21 Ohio St., 1; and there is so little left of that effort since the decision of the case of State v. Yates, 66 Ohio St., 546, that it has little, if any, weight as an authority. The next effort was in McGill v. State, 34 Ohio St., 228. This last case was partly founded upon the case of *85 The State v. The Judges, supra, and partly upon the California decisions under a provision in the hill of rights of the constitution in that state, reading as follows : “All laws of a general nature shall have a uniform operation.” The words “throughout the state,” are omitted, and hence it has been held in that state that a statute which has a uniform operation in the city or county, or to the class or subject to which it has been applied, conforms to the constitution of that state. Such a construction cannot be tolerated in this state for a moment. Here the law must have a uniform operation throughout the state. In the majority opinion in the McGill Case, supra, a quotation is made from The People v. C. P. R. R. Co., 43 Cal., 432, as follows: “The constitution, it will be observed, lias not undertaken to declare that all laws have a uniform operation. Uniformity, in that respect, is made requisite only in case the law itself be one of a general nature, and if it do not purport to be such a one, no objection as to uniformity, or want of uniformity, in its operation, can be interposed. The nature of a given statute, as being general or special, must depend, in a measure, upon the legislative purpose discernible in its enactment. We are not to say that a statute, plainly special in its scope, must either have a uniform operation or not operate at all; for this were to add another to the limitations which the constitution has imposed upon the legislative power, and to hold, in effect, that no special act could be passed at all — at least if ‘uniform’ operation means universal operation, as the argument of the defendant’s counsel would apparently maintain. Nor are we to say that a special statute — special in its aim and in the object it has in view — is, by mere construction, to be converted into a general statute, *86 because tlie subject with which it deals might have been made the subject of a general law. It is obvious that every law upon a general subject is not, per se, nor by constitutional intendment, necessarily a law of a general nature. The subject may be general, but the law and the rule it prescribes may be special. Fees of officers, for instance, constitute a general subject — one which pervades the length and breadth of the state, and extends into every political subdivision of which it is composed — yet a statute may prescribe what these fees of office shall be in a particular county, and may declare that they shall differ from fees established for the same office as duties performed in another county. Such a law would not be a law of a general nature, involving the constitutional necessity of uniform operation; but it would be a special law upon a general subject. And, at an early period in our judicial history, the constitutionality of such a statute was unhesitatingly sustained by this court. Ryan v. Johnson, 5 Cal., 86.”
This case and other California cases hold the constitutional provision in that state, in effect at least, only directory, while in this state we hold our provision mandatory. This being so the rule of decision .there cannot prevail here. With us “uniform operation throughout the state” means universal operation •as to territory; it takes in the whole state. And, as to persons and things, it' means universal operation .as to all persons and things in the same condition or category. When a law is available in every part of the state as to all persons and things in the same condition or category, it is of uniform operation throughout the state.
~~ The dragging in of the California cases when they *87 were not appliable, and upon tbeir authority carving out of a general subject-matter, a special one, or rather an exception, lead to an unsound conclusion in the McGill case, and a departure from the general rule laid down by this Court, both in earlier and later cases. The dissenting opinion in that case repudiated the doctrine of the California cases, and urged the rule in Kelley v. State, supra, but without avail.
Next after the McGill case, came State v. Powers, 38 Ohio St., 54, which failed to follow the doctrine of the McGill or California cases, but on the contrary followed the rule of Kelley v. State, and other like cases, and held that “Under Sec. 26, Art. 2, and Sec. 2, Art. 6 of the constitution, laws regulating the organization and management of common schools, must have a uniform operation throughout the state.”
Next came the case of State ex rel. v. Shearer, 46 Ohio St., 275, and followed the McGill and California cases, and while conceding the subject of schools to be a subject-matter of a general nature, under our constitution, carved out of that general subject-matter a so-called special, or local subject-matter — a special school district — and while the Powers case had held that to be unconstitutional, the Shearer case overruled the 1’owcrs case, and held as follows in the syllabus: “1. A law is not necessarily of a general nature by reason simply of its being upon a general subject. 2. Special legislation upon a subject-matter in its nature local, is not prohibited by Sec. 26 of Art. 2, of the constitution, which provides that ‘all laws of a general nature shall have a uniform operation throughout the state,’ notwithstanding the subject-matter is the subject of a general law. 3. The subject of dividing territory into school districts, is, in its nature, local. Hence, the formation *88 of a special school district from territory within the limits of a township, by special act, is not in conflict with Sec. 26 of Art. 2, of the constitution. The State v. Powers, 38 Ohio St., 54, overruled.”
The Shearer case is expressly founded upon the case in 43 California, and a quotation is made from that case, as was done in the McGill case, but less-extensively. The Shearer case is not founded upon any distinction between the act then in question, and the one in question in the Potoers case; but the decision is put upon the ground stated in the syllabus above quoted.
This case is cited with more or less approval by this Court in State v. Ellet, 47 Ohio St., on page 97; in Commissioners v. Rosche Bros., 50 Ohio St., on page 114, and in Cincinnati v. Steinkamp, 54 Ohio St., on page 292, but in each of those cases the act there under consideration was held unconstitutional, and the doctrine of carving a special subject-matter out of a general one, was not applied.
The case was, however, cited and acted upon, in Metcalf v. The State ex rel., 49 Ohio St., 586, and a large tract of land was by that special act carved out. of the city of Findlay, and attached to an adjoining-township. But later the same question again came before this Court, in Campbell v. State ex rel., 56 Ohio St., 794, which involved the constitutionality of a special act creating a new township out of territory taken from two townships in Logan county. The-Shearer and Metcalf cases were both cited and relied upon,- but this court refused to follow them, and held the special act unconstitutional. The Court was. equally divided; but the statute provides that in such cases the decision shall be held as the law as to all such questions in other causes, until overruled by a. *89 majority of all the judges. Section 439, Revised Statutes. No such overruling has since taken place, but, on the contrary, all the reported cases on the subject since that time are in accord with that decision.
After an exhaustive examination of the decisions of this Court on this subject, it is so clear that the doctrine of carving a special or local subject-matter out of one of a general nature, imported from California, and adopted in McGill v. The State and State ex rel. v. Shearer, supra, is in conflict with Sec. 26, of Art. 2 of our constitution, that we are compelled to overrule the Shearer case, and to reaffirm the Powers case, and the same is accordingly done.
The introduction of this California doctrine of carving a special subject-matter out of a general one, has met with stern resistance in this Court. In the McGill case two judges dissented, and while no dissent appears in the Shearer case, it is well known by the judges then and since composing the Court, that, two judges were opposed to overruling the Powers case. Two judges also dissented in the Powers pase, but upon what ground does not appear. But in nearly all of the later cases, in which the rule laid down in Kelley v. State, supra, has been followed, and often restated, the Court has been unanimous; so that the decided weight of authority in this Court, is, against the doctrine of the McGill and Shearer cases, as well as against the California doctrine of carving a special subject-matter out. of one of a general nature.
It is urged that an emergency existed for the establishment of this special school district, inasmuch as. the people by a vote had refused to create either a joint subdistrict, or a special district, and further that the decision of this case against the defendants. *90 might jeopardize many school districts established by special acts in this state.
To these claims it is sufficient to say that there is no exception to said Sec. 26, of Art. 2 found in the constitution. The requirement is that all laws, of a general nature, not some laws, shall have a uniform operation. There is no provision for violating the constitution in an emergency. Cincinnati v. Hospital, 66 Ohio St., 440. And, moreover in this case there was no emergency, because after the people voted against the establishment of a separate school district, the right remained to go to the probate judge of either Hamilton or Butler county, and have three ■disinterested commissioners appointed, as provided in the general school law.
To the suggestion that other school districts in the state might be jeopardized, it is sufficient to say that it is our sworn duty to decide questions correctly, without regard to consequences; and especially is tliis so in constitutional matters. The law being correctly declared, the judgment can be so framed as to protect the public interests, and prevent anarchy or confusion, as was done in State ex rel. v. Beacom, 66 Ohio St., 491, and thereby as it were, “The wind is tempered to the shorn lamb.”

Judgment of ouster.

Davis, Sbauck, Price and Crew, JJ., concur.